## ISAAC DANIELS *vs.* JOHN ELLISON *et a.*

When an execution, issuing upon a judgment against an administrator, is extended up on real estate, which was of the intestate, the administrator must be notified to choose an appraiser.

Where a sheriff returned in an extent, that the debtor refused to choose an appraiser, but did not expressly state that he had notice; it was held, that the word *refuse* necessarily imported notice, and that the return was sufficient.

TRESPASS *quare clausum fregit.* The defendant pleaded, that the *locus in quo* was his soil and freehold, whereupon the plaintiff newly assigned the trespasses, and the defendant pleaded the general issue to the new assignment.

Upon the trial here at February term, 1825, the plaintiff, to prove his title to the close mentioned in the new assignment, offered in evidence the extent of an execution issued upon a judgment recovered in August, 1825, by *George Frost*, against *John Ellison*, administrator of the estate, which was of *Abraham Ellison* deceased. The defendant's counsel objected, that the officer's return of the extent was insufficient, in the first place, because it was expressly stated in the return, that *Abraham Ellison* was the debtor, and not *John Ellison*, who refused to appoint an appraiser; and in the next place, because had *John Ellison* been stated to be the debtor, the fact of his being notified to appoint an appraiser was not stated. That part of the officer's return, on which these exceptions arose, was as follows :—

" *Strafford, ss. June* 6, 1816. Pursuant to the within pre-
" cept, I have levied and extended the within execution on a
" tract or parcel of land, hereafter described, situated in B.
" in said county, shewn to me by the within named *George*
" *Frost*, the creditor, as the property and estate of the
" within named *Abraham Ellison* deceased, the debtor, in
" manner following, viz. *S. M.* was appointed and chosen
" appraiser by the said *George Frost*, the creditor, the with-
" in named *John Ellison* having refused to appoint an apprais-
" er, *J. S.* was appointed by me for the debtor, *V. S.* was
" appointed an appraiser on my part, all reputable free-
" holders and residents in said county."

And a verdict was taken, by consent, for the defendant, subject to the opinion of the court upon the sufficiency of the said extent.

Daniels
*vs.*
Ellison

*Mitchell,* for the plaintiff.

The only question, reserved for consideration in this case, arises on the sufficiency of the extent of the execution in favor of *George Ffrost* against *John Ellison,* the administrator of *Abm. Ellison* deceased—Is that extent good against the debtor ?

1. The first objection is, that the return states that *Abraham Ellison* was debtor, and not *John Ellison,* who refused, &c. This objection is frivolous. The judgment, execution, and return shew, that *Abm. Ellison was* the debtor—that he was dead—that *John Ellison* was his administrator, and that the extent was on the lands of the deceased. All this is lawful, and rightfully shewn ; and it is equally so, that *John Ellison* is the person entitled to notice ;—the estate of *Abraham Ellison* is the debtor, and his administrator represents the estate.

2. The material objection probably is, that the return does not expressly state notice to *John Ellison* to choose an appraiser, and consequently that *it does not state enough to authorize the appointment by the officer of J. S. for the debtor.*— The proceedings shew *John Ellison* to be the person entitled to choose an appraiser, if he should please so to do. It was the duty of the sheriff to cause an appraiser to be chosen by *John Ellison,* if he so pleased ; and the officer was entitled to choose for him only, when he *refused* to choose for himself. The sheriff in his return says, that *John Ellison refused,* but does not say, that he neglected or refused, *on due notice,* to choose.

Are the words used in the return equivalent to those used in the statute ? I contend that they are ; and it will not, I think, be contended on the other side, that the sheriff must, in order to entitle himself to choose for the debtor, state what notice he gave. The statute might have required this —it might have required him to state the facts as to notice, that the court might judge whether it was due notice. It has not so required. It has been always held, that it is sufficient that he state, *on due notice.* And who is to decide for the officer what constitutes due notice ? It is a fact which he is to decide for himself—the law imposes upon the officer that

duty, even before he makes his return. But if no due notice be given, and the officer state in his return a refusal of the debtor to choose, then the return is false, and the officer liable to an action by the party aggrieved. It is so by necessary implication; because how could there be a refusal where there was no notice ? The right secured to the debtor by that part of the statute requiring notice is, in substance, an opportunity to choose an appraiser. If he has no such opportunity, he is deprived of a right—not, to be sure, of much consequence, as he may redeem, but still a right. The officer need not, according to the invariable practice and decisions, state what the opportunity was, but the fact that the debtor might have chosen. He need not use the words in the statute. He may say, that the debtor refused to avail himself of his privilege, when I gave him the fairest opportunity so to do. He need not use technical terms. Any words which in common acceptance convey the idea is sufficient. 11 *Mass. Rep.* 515, &c.

I admit that " a great degree of technical accuracy is re- " quired in executing the writ of elegit ;" but in England the return is examinable and examined before filed—it is a proceeding in court, not *en pais*, and quashed, confirmed, &c. and therefore may be critically judged. In *Eddy vs. Knap*, (2 *Mass. Rep.* 155,) *C. J. Parsons* says, " the proceedings " ought substantially to pursue the statute." The question when the officer chooses for the debtor is, does he in any terms state sufficient to authorize him to choose for the debtor ?

The form of words used in extents are infinitely various ; and yet, if in common parlance, they shew the essentials complied with, may be all good. In this case there is the assertion of a fact by the officer, that the debtor refused to appoint. If this word *refused*, is to have its natural and only signification, that he could have appointed if he would, then the officer was authorized. The statute does not say, that the *officer* shall notify, or that he shall give due notice in the manner he shall think reasonable, but if the debtor, *on due notice*, shall refuse. I admit, this implies that the debtor

must have notice, or, what is equivalent, an opportunity of appointing, whenever and wherever it is practicable.

But it is clear that notice is not in all cases necessary, but only where it is practicable. Suppose the debtor is out of the state—out of the United States—a foreigner—absconds or disappears to prevent notice—would notice be requisite ? If these are not the present case, they shew the statute has always received a liberal and reasonable construction. The manifest design of the words " on due notice refuse," and " refuse " alone, are, that the debtor may choose, if he please, and *that he has not so pleased* ; so that it all turns on this, does the averment, that the debtor refused to appoint an appraiser, necessarily imply, that he had an opportunity to appoint, or notice ?

The word *neglect* is not essential in this case. Either neglect, or refuse, is sufficient, where there is notice. Here the word *refused* is alone used ; and it is sufficient, if notice is necessarily implied. The officer should cause the debtor to choose an appraiser—he refused—what ? to do what he was asked, demanded, solicited to do—what he had an option to do. *John Ellison* having refused to appoint, I appointed.— Was he not called upon then to appoint ? But let us suppose in this case *John Ellison* should sue the officer for a false return, in returning that he, *John Ellison*, refused to appoint, when in truth and in fact he had no notice or call to appoint ; could the officer say, I might have notified and did not, but my return is not false, because you did not appoint ? Would the court sanction a doctrine like this ?

Suppose also another case. By the statute and the construction put upon it, to the vesting of land on extent in the creditor, there must be the act of accepting seisin—till then the creditor may be off, and the land vests not. It is no acceptance, no title. Sometimes the acceptance of seisin is endorsed, and this is usual, but not necessary. The return by the officer of ' delivery of seisin,' or possession, or words equivalent, is deemed to be sufficient. Why ? Because seisin necessarily implies a person to whom it is delivered, and who actually accepts. Suppose there was no such person ;—would the return be true ? Suppose the person re-

fuses to accept ; would it be true ?  In 12 *Mod. Rep.* 361, *Holt.* C. J. says, " surely delivery implies acceptance."  It does so, but no more than a refusal to appoint implies an offer or request for the purpose.

Suppose the sheriff sued for a false return, in stating a delivery of seisin, when there was no acceptance (or a refusal to accept, a still stronger case) ; would not the return be false ? And why ? Because the acceptance is implied in the word *deliver*.  Could the officer say, True, you did not accept seisin, but I chose to satisfy your debt, and made return accordingly.

It is believed, that the decisions in this state have been generally, if not uniformly, in conformity to this doctrine.— I have been able to find no case directly against it, but have found two directly in point confirming the doctrine contended for.  The first is *O. Crosby vs. White & Canney*, S. C. Straff. Sept. Term, 1810.—This was a writ of entry—demandant's title by extent of executions—three extents—one stated officer chose appraiser for debtor who *refused*—another stated notice, to debtor, not saying *what, when, how, due,* or *reasonable*, objections overruled in both cases.  *J. Smith,* for demandant ; *Mason,* for tenants.

S. C. Hillsb. April Term, 1812 ; *Parker vs. Wadsworth ;* the words were, " debtor neglecting and refusing to choose " an appraiser, I chose," &c. ; nothing said about notice, unless implied in the refusal—motion for new trial, on this point saved.  At Oct. *Curia*—We cannot distinguish this case from *Crosby vs White et a.* by which we abide.  It is believed that one half the titles would be overthrown by this exception, if held good.

The case of *Sewall et al. vs. Wallace et al.* S. C. Hills. Dec. term, 1815, may be distinguished from the case under consideration.  There the officer returns " *S. H.* chosen by " myself, the debtor *neglecting* to choose a man."  The words neglect and refuse are words of different signification ; and when used in an officer's return, may imply very different things.  To neglect to do a thing is merely to omit its performance ; but to refuse to do an act is to deny doing it, or to protest against doing it.  In neglecting to choose an

Daniels
*vs.*
Ellison

appraiser, the debtor and officer may be merely passive, and the officer's return, that he *neglected*, would not necessarily imply, that he had an opportunity or notice to choose. He might neglect with, or without notice. But when the officer returns that the debtor refused to choose, something more, and something different from neglect is necessarily implied. It is this, that the debtor had an opportunity or request to choose, and that he declined it. This is the common and necessary import of the word *refused*, as used in the return. Whatever the debtor *neglected*, he simply refrained from doing ; whatever he *refused*, he denied, or protested against doing. It is manifest from the whole return, in this case, that the word was meant to be used in this sense ; and why refuse it the only sense, which the return naturally presents, and which the word literally imports ? "It is the "sense most suitable to the subject or matter, to which it "relates ;" and the subject-matter ought to be considered, and the word interpreted, where it can be, in a manner suitable to the subject-matter alone. He refused—*to whom ?* To the officer. But will it be objected, that nothing shall be implied in a return, which is a real assurance, that all the necessary facts shall be stated—that nothing shall depend upon construction ? This is not true of any proceeding *en pais.* Many things are implied. In this case the statute requires, that the creditor shall deliver his execution, and direct service, &c. Yet this fact need not be stated ; it is implied in the creditor's after conduct. 8 *Mass. Rep.* 113, *Herring et a. vs. Polley.*

Creditor can only extend on real estate, where the debtor does not expose or tender personal estate. This matter need not be stated. It seems presumed from creditors generally preferring personal, if they can find it. 11 *Mass. Rep.* 515. So the appointment of attorney is presumed. 13 *Mass. Rep.* 113. The statute says, all lands, belonging to any person in fee, are liable, &c. ; in construction, an equity of redemption is extendible, though the legal estate is in the mortgagee. So lands of deceased persons, held by heirs, devisees, &c. are extendible, although the lands of a person, who has ceased to be debtor, or to hold. So lands not in fee, that

is, less estates of the debtor are extendible. So freeholders mean reputable freeholders. So the statute requires the appraisers to set off the lands, &c. by metes and bounds ; but it is clearly good, if done by the officer. The extent would also be good without metes and bounds, if courses, distances and monuments were named ; indeed, any such description, as would be good in a deed, is sufficient. So a *majority* of appraisers may appraise. It is evident then, that the statute is construed liberally and reasonably, and admits of *implications* ; that it requires no technical words in a return—that any words, which necessarily imply that the debtor had the option to choose or not to choose an appraiser, as he pleased, are sufficient. The word *refused* admits of but one construction, namely, that the debtor would not choose, when he might.

From adjudged cases and well settled principles, it is apparent then, that the verdict ought to be set aside, and a new trial granted.

*Ela*, for the defendant.

The objection we make to this extent is, that it does not appear, that the debtor was notified according to the requisition of the statute, in order that he might appoint an appraiser.

It is unnecessary to repeat the fundamental maxim of the law, that statutes taking away individual rights are to be strictly construed. Nothing in these cases is to be taken by intendment ; nor are exceptions to them to be considered frivolous or captious—for a very obvious reason. In the ordinary transactions of life, the consent of the owner is an essential ingredient in the transfer of property ; peculiarly so in the case of real estate, the transfer of which is guarded with so many formalities. But in these cases the fee is diverted against the consent of the proprietor. The proceedings are in hostility with all the maxims of the common law. Courts are therefore bound to regard them with jealousy. No equitable consideration is to be taken into view. If on a strict comparison with the provisions of the statute,

they are found to comply, the court are bound to support them, but nothing is to be presumed or implied in their favor.

The question is, can this levy be supported by the statute, which provides, that after due notice, if the debtor neglects or refuses, the officer may appoint an appraiser. The return of the extent states that " the within named *John Ellison* having refused to appoint an appraiser, I have appointed," &c. ; and the question before the court is, whether this word *refuse* contains a sufficient allegation of " due notice" to satisfy the requisitions of the statute.

I contend in behalf of the defendant, that it does not either upon the reason of the thing, or upon authority.

1. This allegation of notice is material. It may be of great consequence to a debtor to have this notice ; and if he is deprived of this right, the law affords him a remedy. If the court support this form of alleging notice, will there ever be an action supported for a false return ? Is the allegation sufficiently direct for that purpose ? and would not subterfuges be countenanced, by which the debtor may be deprived of his property without being apprized of it ? The statute contemplates, that the debtor shall not merely have notice, but *due* notice. If the word *refuse* imply notice of some sort, either from a third person or from some other source, it surely does not necessarily imply that due and solemn notice, required by the statute before the subject can be stripped of his property.

2. And on authority it has been decided, that where the return sets forth that the debtor *neglected*, it is not sufficient allegation of notice. It may be said that *neglect* is merely passive, and *refuse* is active. This sort of criticism may be correct ; the words are not probably synonymous ; still, so far as regards this statute, they are used as synonymous, and equally import notice. And if one would not maintain an action for a false return, in case notice was not given, neither would the other. The implication of notice is as strong in the one case as the other.

This case is stronger than that of *Mead* vs. *Harvey* : there the return was, that the premises were appraised in full satisfaction of the within execution. Though *no sum was men-*

tioned, this return referred to the other side of the paper, where it was set forth. Still, as the statute required an appraisal, the court would not support the return, because every requisition of the statute was not complied with.

From the manner, in which this return is made, it is apparent, that no notice whatever was given to *John Ellison*. *Abraham* was considered in the return as debtor. He being dead and that fact being alleged, it was probably not thought necessary to give notice to his representative. Why should his being named in the return have otherwise happened? The judgment is against *John*. He is the party entitled to due notice. It does not appear, that he had that notice; and for want of it, we contend, that this levy is bad.

*By the court.*—It is objected, that, admitting *John Ellison* to have had the right to appoint an appraiser in the extent now under consideration, it does not appear that he was notified to appoint one. If this objection had been well founded in fact, it is very clear, that it must have prevailed. But, we think, it has no foundation in point of fact. The return states, that he refused to appoint an appraiser; and a refusal, *ex vi termini*, imports notice; so that notice is necessarily implied in what is stated in the return; and, we entertain no doubt, this is sufficient. In the case of *Sewall et a. vs. Wallace et a.*, which is cited 2 *N. H. Rep* 497, it was decided, that it was not sufficient to state in the return, that the debtor *neglected* to choose an appraiser. But that decision was founded upon an exceedingly rigid construction of the statute, and the principle was pushed in that case to its utmost extent. We do not, however, intend in this case to call in question the soundness of that decision. That case is clearly distinguishable from this. The word " *refuse*" much more emphatically imports notice, than the word " *neglect*." It is supposed, that the decision in that case was founded upon an opinion, that the word " *neglect*," did not necessarily imply notice. Indeed, it is difficult to conceive on what other ground that decision can be supported. But the word " *refuse*" necessarily imports notice.

But it is further objected in this case, that *John Ellison*, the administrator, was not the person to be called upon to appoint an appraiser ; because, upon the death of *Abraham Ellison*, his real estate descended and vested in his heirs ; and if the estate of the heirs was to be taken to pay a debt of *Abraham Ellison*, the heirs ought to have been notified to appoint an appraiser. But we think, that this objection cannot prevail. A judgment, recovered against an administrator, may be satisfied by an extent upon land, which has descended from the intestate to his heirs. And as the law intrusts the administrator to defend the suit, in which the judgment may be recovered, without notice to the heir ; *a fortiore*, he shall be intrusted to appoint an appraiser, when the execution is extended upon the land, which the heir has by descent from the intestate. The uniform practice, it is believed, has been to notify the executor or administrator in such cases ; and we cannot entertain a doubt, that it is the correct course. If the administrator misdemeans himself in the business, to the injury of the heirs, he may be called to an account ; and, if he misjudges, the heirs may have an adequate remedy by redeeming the land.

*Verdict set aside, and new trial granted.*